**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DAVID K. PORATH,

                            Plaintiff,

      v.                                                    No. 11-CV-963
                                                               (GLS/CFH)

BIRD, Investigator, NYS Police,

                            Defendant.[1]

---

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| DAVID K. PORATH<br>11-A-2120<br>Plaintiff Pro Se<br>Sing Sing Correctional Facility<br>354 Hunter Street<br>Ossining, NY 10562 | |
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General for the<br>  State of New York<br>Attorney for Defendant<br>The Capitol<br>Albany, New York 12224-0341 | KEVIN P. HICKEY, ESQ.<br>Assistant Attorney General |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se David K. Porath ("Porath"), an inmate currently in the custody of the New

---

    [1] By stipulations of discontinuance dated April 10, 2012 and November 7, 2012, defendants Sergeant Michael J. Lewis and Deputy N. Prusky were dismissed from this action. Dkt. Nos. 36, 55.

    [2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

York State Department of Corrections and Community Supervision ("DOCCS"), brings this action against Bird, a New York State ("NYS") Police Investigator, alleging violations of the Civil Rights Act, 42 U.S.C. § 1983. Compl. (Dkt. No. 1). Porath contends that Bird deprived him of his constitutional rights under the Fourth Amendment. Id. Presently pending is Bird's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 46. Porath opposes this motion. Dkt. No. 56. For the reasons which follow, it is recommended that Bird's motion be denied.

### I. Background

The facts are related herein in the light most favorable to Porath as the non-moving party. See subsection II(A) infra. The events in question occurred prior to Porath's conviction and incarceration.

### A. Burglary

According to Bird, on November 14, 2010, non-party Sergeant Phelps ("Phelps") advised Bird that he had stopped two burglary suspects in a vehicle on Midline Road in Perth, New York.[3] Bird Decl. (Dkt. No. 46-4) ¶ 4. Shortly thereafter, non-party Trooper David Vigliotti ("Vigliotti") informed Bird that one of the suspects, Porath, fled the scene during questioning. Id. ¶ 5. Vigliotti explained that the other suspect, Laurie Rusnica ("Rusnica"), admitted to burglarizing residential homes with Porath and was taken into custody. Id.; Dkt. No. 46-7. Vigliotti further informed Bird that a search detail was looking

---

[3] Suspects Laurie Rusnica and David K. Porath were followed by law enforcement authorities pursuant to a court order. Dkt. No. 46-6.

for Porath.  Bird Decl. ¶ 6.

Porath claims he hid in the woods for four to five hours.[4]  Porath Dep. (Dkt. No. 46-3) at 32:9–10.[5]  When Porath called his friend, non-party Sandra Bechard, to pick him up, Phelps[6] answered Bechard's phone.[7]  Id. at 32:17–22.  Porath agreed to surrender to Phelps and Bechard for committing burglary in the second degree.  Id. at 32:21–22, 37:13–19; Compl. ¶ 7.  When Bird arrived at the scene, he heard the phone call from Porath to Phelps, which was broadcasted over a loudspeaker.  Bird Decl. ¶ 13.  Bird realized that Porath's claimed location was inconsistent with the surrounding environment.  Id.  Based on the inconsistencies, Bird believed Porath intentionally misdirected the search detail to approach the east side line of Midline Road when Porath was actually located on the west side.  Id.  Bird further believed that Porath lied in order to access Bechard's vehicle parked on the west side of Midline Road.  Id.; see Dkt. No. 46-9.

### B.  Use of Force Incident

Porath claims he came out of the woods and was walking towards Phelps and Bechard when Bird ran up to him, pulled out a gun, and ordered him to get on the ground.  Porath

---

[4] Bird submitted an incident report indicating that the November 14, 2010 incident began at 9:25 a.m. and Porath was taken into custody at 1:25 p.m.  Dkt. No. 46-5.

[5] The page numbers following "Porath Dep." refer to the pagination of the header numbers generated by CM/ECF, not the individual transcripts.

[6] Porath spelled Phelps's name as "Phillips."  Compl. ¶ 8.  However, the incident report for the arrest at issue uses the former spelling.  Dkt. No. 46-5.  The Court uses the former spelling for this Report-Recommendation.

[7] Police officers accosted Bechard when Bechard parked on Midline Road.  Dkt. No. 46-9.

3

Dep. at 33:3–8; Compl. ¶ 8. Porath complied and laid on the ground facing down. Porath Dep. at 33:8–9; Compl. ¶¶ 8–9. Porath alleged that non-party Prusky jumped on his back and Bird proceeded to cuff his left wrist then grabbed his right arm and jerked it back and up. Porath Dep. at 33:13–16; Compl. ¶ 11. Porath yelled out in pain, "my arm, my arm," to which Bird replied "I don't give a F[]," yanked Porath's arm back, twisted the arm counterclockwise, then brought it back. Porath Dep. at 33:17–21. Porath yelled, "[y]our [sic] hurting my shoulder." Compl. ¶ 12. Bird continued to twist Porath's right arm. Id. At this point, Porath "felt something rip and separate all at the same time." Id. Porath said, "[y]ou did something to my arm." Porath Dep. at 33:24–25. Bird ignored Porath's pleas. Id. at 33:24–34:1. Porath claims he did not resist arrest and his right arm was limp when he was being cuffed. Porath Resp. (Dkt. No. 56) at 5; Porath Dep. at 42:19–43:9.

After suspecting Porath was not at the claimed location, Bird separated from the search detail and spotted Porath crouching under a tree. Bird Decl. ¶ 14. Bird attested that he ordered Porath to come out and speak with him and Porath complied. Id. Porath asked Bird to not handcuff him, to which Bird attested he would not agree to because Porath already fled from the police for several hours. Id. Bird removed handcuffs from his pocket and stepped toward Porath. Id. Porath started to run pass Bird. Id. Bird caught up with Porath, tackled and straddled Porath, and attempted to handcuff Porath.[8] Id.

According to Bird, he placed the first handcuff on Porath with minimal effort and resistance. Bird Decl. ¶ 16. As for the second handcuff, Porath was not immediately or completely cooperative. Id. However, Bird would not categorize Porath's actions as

---

[8] Porath does not claim that the tackling or straddling constituted excessive force used against him. See Compl. ¶¶ 11–12; Porath Resp. at 8–9.

4

"resisting arrest." Id. Bird later learned that the difficulty in cuffing Porath's right wrist was compounded by the fact that the cuff was bent, presumably from tackling Porath. Id. ¶ 17.

At approximately 1:25 p.m., Bird took Porath in custody, who later pled guilty to attempted burglary in the second degree. Porath Dep. at 12:5–12; see also Bird Decl. ¶ 10; Dkt. No. 46-8. Bird attested that other than cuffing Porath's wrists as he was trained, he did not rotate, pull, or yank Porath's arm. Bird Decl. ¶ 20. Bird explained that because Porath twice exhibited a propensity to flee when the opportunity arose and provided false information to the search detail in an effort to avoid capture, he felt it was necessary to gain custody and control over Porath. Id. ¶ 24.

### C. Shoulder Injuries

Porath has a history of shoulder injuries prior to the use of force incident. In 2007, Porath injured the acromioclavicular ("AC")[9] joint in his right shoulder from playing softball. Porath Dep. at 51:3–17. As a result, Porath had to undergo surgery. Id. at 51:16–22.

From 2008 through 2010, Porath was incarcerated for committing another crime and had work restrictions during the course of his incarceration, including not being given work assignments. Porath Dep. at 54:3–16. After his discharge from prison, Porath did not see any healthcare professionals or undergo physical therapy for his shoulder as he "was given

---

[9] Acromioclavicular "pertain[s] to the acromion and clavicle, especially to the articulation between the acromion and clavicle." DORLAND'S ILLUSTRATED MED. DICTIONARY 20 (28th ed. 1994) [hereinafter "DORLAND'S"]. The acromion is "the lateral extension of the spine of the scapula, projecting over the shoulder joint and forming the highest point of the shoulder[.]" Id. The clavicle is "the bone articulating with the sternum and scapula[.]" Id. at 339.

5

a clean bill of health" from Green Haven Correctional Facility's medical staff.[10]  Id. at 55:1–8, 55:24–5.  Porath testified that prior to his arrest, his right shoulder was "excellent." Id. at 52:23–53:1.  During Porath's current incarceration for burglary, he is part of the prison's paint crew.  Porath Dep. at 22:6–7.  However, Porath's abilities are limited as he was told by doctors in prison that he could not use ladders and can only work with his left hand.  Id. at 22:8–16.

After his arrest, Porath was taken to the Fonda barracks for three to four hours and complained to a state trooper about his shoulder pains.  Porath Dep. at 47:8–15.  When Porath was transferred to the Fulton County Jail ("Fulton"), Porath informed the officers there of his shoulder pains.  Compl. ¶ 14.  Non-party Dr. Glenn saw Porath at Fulton and scheduled a Magnetic Resonance Imaging ("MRI") for Porath, which took place in December 2010 at the Nathan Laturer Hospital.  Id. ¶¶ 16–17; Porath Dep. at 98:18–22.  The MRI showed a torn rotator cuff, a torn labrum, an impingement, a "SLAP lesion,"[11] and tearing of muscles.  Compl. ¶ 18; Porath Dep. at 57:19–21; see also Dkt. No. 1 at 16.  Porath was sent to see a specialist, non-party Dr. Ayres, who conducted surgery on Porath.  Compl. ¶ 19.

Dr. Ayres's progress report dated February 9, 2011 states that Porath "tried to flee, was grabbed and with an extension, abduction, external rotation force to his right shoulder."

---

[10]  A medical summary from Green Haven Correctional Facility dated June 9, 2010 indicates that Porath has "chronic" shoulder pain and references the Mumford procedure conducted in 2008.  Dkt. No. 58-2.

[11]  SLAP stands for "Superior Labrum Tear from Anterior to Posterior."  Labrum is "a general term for an edge, brim, or lip."  DORLAND'S at 892.  A type of labrum, glenoidale, refers to "a ring of fibrocartilage attached to the rim of the glenoid cavity of the scapula, increasing the depth of the cavity[.]" Id.

Dkt. No. 1 at 14. Porath was in serious pain. Id. Dr. Ayres reported that Porath

> has a history of trouble with his shoulder . . . had a "Mumford" procedure in 2008, had 18 weeks of physical therapy . . . still had a fair amount of pain . . . . Bringing his arm across his chest hurts . . . .
>
> [Porath] has a well-healed transverse scar across the remnant of his right AC joint, which is still tender. . . . Patient can elevate with pain, . . . internally rotate to about L3, externally rotate about 20 degrees, all with good strength. He has good deep tendon reflexes.
>
> . . .
>
> [Porath] does have an MRI . . . which does show a change in a more posterior portion of his rotator cuff, . . . with what was described as a partial tear, which may be more of a complete tear with actual possible impact changes in the greater tuberceity.
>
> . . .
>
> [Porath] does have changes in his rotator cuff with a fair amount of pain, specifically where his MRI is showing change. . . . He does have adequately decompressed AC joint. . . . makes sense to consider arthroscopy[12] or a possible open acromioplasty[13] and repair of rotator cuff as indicated. . . . [Porath] does appear to have pathology, and I do not think physical therapy will help.

Id. at 14–15.

On April 26, 2011, Porath was scheduled for surgery, but Porath was informed that due to extensive damage, surgery would not be possible. Compl. ¶ 20. In an operative report dated April 26, 2011, Dr. Ayres wrote

---

[12] Arthroscopy is an "examination of the interior of a joint with an arthroscope." Id. at 142.

[13] Acromioplasty refers to the "surgical removal of the anterior hook of the acromion to relieve mechanical compression of the rotator cuff during movement of the glenohumeral joint[.]" Id. at 20.

7

> with a fairly extensive complex SLAP lesion, no further work was
> done, and it was decided that, because of the difficulty in
> repairing a SLAP lesion with splits, this would be a simply
> diagnostic procedure. The patient will be referred to Dr. Lassiter
> of the Sports Medicine and Shoulder Institute for consideration
> of further surgery . . . .

Dkt. No. 1 at 16. On July 21, 2011, Porath saw non-party specialist, Dr. Holder, who stated that he could not "make [Porath's] arm normal again" but "will try to make it workable." Compl. ¶ 21. Porath claims he underwent a major surgery on October 20, 2011. Dkt. No. 59 at 4. Porath contends that Dr. Holder may conduct another surgery for his shoulder. Porath Dep. at 97:11–16. Neither Dr. Ayres nor Dr. Holder related Porath's current shoulder problems with his softball injury. Porath Dep. at 59:1–14, 61:3–21.

## II. Discussion

Porath contends that Bird violated his Fourth Amendment right against the use of excessive force during an arrest when Bird yanked and twisted Porath's arm back to handcuff him and continued to do so after being informed by Porath of his shoulder pains, which resulted in injuries requiring surgery. Bird argues that: (1) his use of force was objectively reasonable; (2) Porath failed to show the nature of his injuries and a causal connection between such injuries and his actions; and (3) he is entitled to qualify immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the

8

absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

9

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247–48.

### B. Fourth Amendment

### 1. Excessive Force

The Fourth Amendment prohibits a law enforcement officer from using excessive force during the course of effecting an arrest.  Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  However, in making an arrest, a law enforcement officer "necessarily carries . . . the right to use some degree of physical coercion or threat thereof to effect it."  Graham, 490 U.S. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22–27 (1968)).  In determining whether an officer used excessive force in executing an arrest, the Court examines whether the force used is objectively unreasonable "in light of the facts and circumstances confronting [the officer], without regard to the officer['s] underlying intent or motivation."  Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham, 490 U.S. at 397).  This inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham, 490 U.S. at 396 (internal quotation marks and citations omitted).

10

To measure reasonableness, the Court "consider[s] the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." Jones, 465 F.3d at 61 (quoting Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)). Reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (quoting Graham, 490 U.S. at 396) (internal quotation marks omitted).

As an initial matter, Porath's surrender, which is uncontested, provides the probable cause for the arrest which, in turn, acknowledged that Bird was authorized to use some degree of force to effect the arrest. Jennejahn v. Village of Avon, 575 F. Supp. 2d 473, 478 (W.D.N.Y. 2008) (citation omitted) (noting that plaintiff's concession to probable cause for his arrest also recognizes defendant's ability to use some force in making the arrest).

Turning to the factors articulated in Jones v. Parmley, the crime committed and its severity are undisputed; thus, militating in favor of defendants. Bird had reason to believe that Porath was burglarizing residential dwellings with Rusnica and Porath later pled guilty to attempted burglary in the second degree. In New York, burglary in the second degree is a Class C violent felony offense. N.Y. PENAL LAW §§ 70.02(1)(b), 140.25(2) (McKinney 2012). Accordingly, Porath admitted to engaging in violent criminal behavior prior to his arrest. Further, it is also undisputed that Porath fled from the authorities, intentionally attempted to mislead them, and remained a fugitive for several hours. This further amplified the severity of the criminal conduct in which Porath was engaged. Tracy, 623 F.3d at 97 (considering the seriousness of plaintiff's criminal conduct, specifically the officer's reasonable and ultimately correct belief that plaintiff was a fugitive seeking to

evade capture, as support for defendant's reasonable use of force).

However, material issues of fact exist with respect to whether Porath posed a dangerous threat to Bird, other officers, or the public at large. A review of record evidence shows that Porath was neither armed at the time of his arrest nor attempted to assault an officer. Bird does not assert the contrary. Cf. Garcia v. Grisanti, 998 F. Supp. 270, 273 (W.D.N.Y. 1998) (concluding that use of force would be reasonable when plaintiff actively resisted arrest by grabbing a shotgun and attempted to strike defendant with a steam iron). Further, the record indicates that the assistance of other officers was available and there were no environmental factors interfering with Bird's ability to execute the arrest. Cf. Tracy, 623 F.3d at 97 (reasoning that because defendant was alone, at night, in bad weather, while effecting an arrest, such factors contributed to a real and imminent risk to the defendant). According to Porath, Bird pointed a gun at him while ordering him to get on the ground, to which he complied.[14] If Porath attempted to evade capture for a second time by running from Bird, as Bird asserts, then Porath may have created circumstances posing a dangerous threat to Bird and others. Jones, 465 F.3d at 61. This competing evidence rests on the credibility of Porath on the one hand and Bird on the other. Such a credibility determination is reserved for a jury to decide. Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) (citations omitted). Thus, Bird has failed to show an absence of disputed material fact with respect to this factor concerning Porath's dangerousness. Celotex Corp., 477 U.S. at 323.

As for the final factor, record evidence also reveals disputed material facts. It is

---

[14] The governing law dictates that the evidence must be viewed in the light most favorable to the non-moving party.

12

undisputed that Porath evaded arrest at least once for several hours. However, as discussed above, Porath and Bird provide contradictory allegations as to whether Porath attempted to run from Bird after being ordered to drop on the ground. Cf. Tracy, 623 F.3d at 94, 97 (noting that plaintiff fled from officers and thus reasoning that from the time plaintiff fled until defendant apprehended him, plaintiff's conduct posed a serious and imminent risk to defendant's safety). Further, Porath and Bird proffered disputed assertions as to whether Porath resisted being handcuffed. Porath maintains that his right arm was limp when Bird took it, pulled it back and up, and twisted it before and after cuffing his right wrist. Bird contends that while Porath did not resist arrest, Porath was not immediately or completely cooperative in having his right wrist handcuffed.[15] Furthermore, Bird maintains that he only cuffed Porath as he was trained and did not rotate, pull, or yank Porath's arm. These conflicting accounts of "the degree of force used, the necessity for force, [and] whether any force was excessive," cannot be resolved through this motion for summary judgment. Betancourt v. Slavin, 676 F. Supp. 2d 71, 78 (D. Conn. 2009); see also, Crowell v. Kirkpatrick, 400 F. App'x 592, 594–95 (2d Cir. 2010) (finding defendant used reasonable force even though plaintiffs were arrested for minor crimes and did not threaten safety of others because plaintiffs actively resisted their arrest at the time defendants tased them).[16] Given the factual disputes with respect to whether Porath resisted arrest, as well as the factor concerning the dangerousness posed by Porath, it cannot be determined at this

---

[15] Bird also indicated that the bent handcuffs contributed to the difficulty in cuffing Porath, although the reason for this assertion is not expressly given.

[16] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

13

juncture whether Bird used objectively reasonable force at the time of Porath's arrest.

Accordingly, Bird's motion on this ground should be denied.

## 2. Injuries and Causation

Bird contends that Porath has failed to (1) establish the nature of his injury and (2) casually connect his injuries to Bird's actions.

Courts in this Circuit have dismissed excessive force claims brought under the Fourth Amendment where a plaintiff only suffers a de minimis injury. Lemmo v. McKoy, No. 08-CV-4264 (RJD), 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (citation omitted). De minimis injuries "include short-term pain, swelling, and bruising, . . . brief numbness from tight handcuffing, . . . claims of minor discomfort from tight handcuffing, . . . and two superficial scratches with a cut inside the mouth." Id. (citations omitted). Nevertheless, even if the injuries suffered were neither permanent nor severe, a plaintiff may still recover under the Fourth Amendment if the force used was unreasonable and excessive. Robison, 821 F.2d at 924 (citations omitted).

In this case, despite Porath's inartful articulation of his shoulder injuries,[17] record evidence shows that after Porath's arrest, Porath experienced shoulder pains to such an extent that surgery was contemplated and conducted. Porath testified that prior to his 2010 arrest, he had recovered from his 2007 shoulder injury and no longer required physical therapy. However, after his arrest, Porath's abilities in working with the prison

---

[17] For example, in his complaint, Porath alleged that Bird "caused [him] to sustain several permanent injuries to his R. shoulder which injuries include (????). See chart #1305719 attached." Compl. at 5.

14

paint crew were limited.  Further, Porath's MRI showed that Porath has a torn rotator cuff, a torn labrum, an impingement, a "SLAP four lesion," and tearing of muscles.  Moreover, Dr. Ayres noted that Porath experienced shoulder pains after his arrest and continued to experience such pain.  Given the multiple muscle tears, pain, and decreased abilities, such record evidence demonstrates that Porath suffers from injuries beyond what courts have considered to be de minimis.  Lemmo, 2011 WL 843974, at *5.  In addition, assuming Porath's injuries are neither permanent nor severe, Porath may still recover damages if Bird is found to have used excessive force against Porath.  Therefore, Bird has failed to show an absence of factual disputes with respect to the nature of Porath's injuries.  Celotex Corp., 477 U.S. at 323.

    As for causation, Bird's contention that Porath failed to establish a causal connection between the alleged injuries and the use of force during the arrest also presents factual issues.  As a preliminary matter, "in an excessive force case, a plaintiff may recover damages for the aggravation of a preexisting injury caused by the use of excessive force."  Galunas v. Reynolds, No. 11-CV-14 (MAD/RFT), 2013 WL 316618, at *5 (N.D.N.Y. Jan. 28, 2013) (citations omitted).  Porath testified that he underwent surgery from sustaining a softball injury and participated in physical therapy sessions; however, Porath did not require physical therapy in 2010 prior to his arrest.  In fact, Porath testified that he had recovered and "was given a clean bill of health."  Even though record evidence indicates that Porath has a preexisting shoulder injury, Porath contends that neither Dr. Ayres nor Dr. Holder informed him that his current injuries constitute aggravation of his prior injuries.  Bird does not provide any support to contradict Porath's contentions that his shoulder injuries were proximately caused by the alleged constitutional violation.  Moreover, even if Porath's

15

injuries were an exacerbation of his previously identified shoulder ailments, Porath is not precluded from recovery. Regardless of whether the trauma resulted in a new injury, or the aggravation of an old one, it is irrelevant for present purposes because both are sufficient to establish a constitutional claim. Further, although Bird correctly points out that Porath contradicted himself with regard to "the method and manner in which he was injured," such inconsistent statements concerning credibility are more appropriately reserved for a jury determination.[18] Robison, 821 F.2d at 924; Galunas, 2013 WL 316618, at *5. Therefore, Bird has failed to satisfy his burden in showing an absence of disputed material facts concerning Porath's shoulder injuries and their causation. Celotex Corp., 477 U.S. at 323.

Accordingly, Bird's motion on this ground should be denied.

### C. Qualified Immunity

Bird claims that even if Porath's constitutional claim is substantiated, he is nevertheless entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229–30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 F. App'x 146 (2d Cir. 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was

---

[18] Bird compares inconsistent statements in Porath's deposition where Porath asserts that Bird twisted his arm and then subsequently claims Bird never twisted his arm. Dkt. No. 46-11 at 12.

objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. It is well-settled that on November 14, 2010, the Fourth Amendment prohibited law enforcement officers from using excessive force during the course of executing an arrest. Graham, 490 U.S. at 394–96. Thus, because a reasonably jury could conceivably accept Porath's claim that Bird's use of force was objectively unreasonable, Bird is not entitled to qualified immunity in this case for the alleged Fourth Amendment violation.

Accordingly, Bird's motion on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Bird's motion for summary judgment (Dkt. No. 46) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 7, 2013
       Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge